UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KERRI P. DOUGLAS,

                           Plaintiff,                    15-cv-9473 (PKC)

          -against                                     MEMORANDUM
                                                        AND ORDER


NEW YORK PRESBYTERIAN HOSPITAL,

                           Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Kerri P. Douglas, who is unrepresented, brought this action against her former

employer, New York Presbyterian Hospital (the "Hospital") alleging violations of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e, et seq., in connection with unequal terms and conditions of

employment, failure to promote and termination of employment.  Generously construed, she also

alleges discrimination by reason of pregnancy, retaliation for exercising rights under the Family

and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and a hostile work environment

related to her disabilities (anxiety and depression) and her pregnancy.

          On September 25, 2015, long after the termination of her employment by the

Hospital, Ms. Douglas executed a "Confidential Settlement Agreement and Release of Claims"

containing broad release language.  Defendant has claimed that the action in its entirety is barred

by the settlement agreement and release, and Ms. Douglas testified in her deposition that she

understood that the agreement precluded from bringing future claims against the Hospital.  This

Court bifurcated pretrial discovery, allowing a limited period for the parties to conduct discovery

on the effect of the agreement and release.  (Docket # 20.)  That period has concluded and the defendant has moved for summary judgment.  (Docket # 30.)

The motion was served on plaintiff more than three months ago, together with the notice to pro se litigants required by Local Civil Rule 56.2, which, among other things, warned of the consequences of failing to respond.  (Docket # 32.)  The Court has received no response to the motion, or any other communications from plaintiff.

Consistent with Second Circuit precedent, the Court will adjudicate the merits of the motion.  See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241 (2d Cir. 2004). The principle issues presented on this motion are whether the settlement agreement containing a release covered the claims now asserted, and whether the totality of circumstances indicates that she executed a release of all claims in a knowing and voluntarily manner.  The Court "must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment."  Jackson v. Fed. Exp., 766 F.3d 189, 197 (2d Cir. 2014).  The Court concludes that the defendant is entitled to summary judgment.

FACTS

The material facts asserted by the defendant are supported by the record and are undisputed.[1]   All reasonable inferences are drawn in favor of the non-movant, Ms. Douglas.

A.  Events Preceding the Execution of the Settlement Agreement.

Ms. Douglas worked for the Hospital for approximately 11 years.  (D. 56.1, ¶ 2.) Shortly after her termination, her counsel wrote to the Hospital asserting that it had violated her rights protected by the ADA, Title VII, the FMLA and various state laws.  (Id., ¶ 5.)  Sometime

---

[1] Citations to "D. 56.1, ("D. 56.1, ¶_")" are to the Defendants Statement of Undisputed Facts filed, pursuant to Local Rule 56.1, and are intended to refer to both the statement and the record evidence cited in support of the statement.

after the letter, Ms. Douglas terminated her relationship with the lawyers representing her.  (Id., ¶ 6.)

Thereafter, Ms. Douglas filed a complaint with the New York City Human Rights Commission (the "Commission").  (Wager Decl., Ex. 2.)  After investigation by the Executive Director of the Law Enforcement Bureau, it determined that there was no probable cause to support the claimed violations.  (Id., Ex. 3.)  She appealed the finding to the Commission, and the finding was affirmed.  (Id., Ex. 4.)

During the pendency of the appeal to the Commission, Ms. Douglas commenced an action against the Hospital in the Small Claims Part of the City Court of White Plains, Westchester County, New York.  (Id., Ex. 5.)  She claimed $4,141.47 in unpaid wages.  (Id.)  Patricia L. Wager, an attorney working for the Hospital, telephoned Ms. Douglas and offered to settle the matter for $2,000.  (Wager Aff't, ¶ 9.)  According to Ms. Wager, Ms. Douglas asked for an additional $2,500, or $4,500 in total.  (Id.)  Ms. Wager telephoned the plaintiff to increase the offer to $3,500 and Ms. Douglas accepted.  (Id., ¶ 10.)  On September 3, 2015, Ms. Wager sent a two-page settlement agreement containing a release and a stipulation, discontinuing the action in White Plains City Court.  (Id., ¶ 11.)  The transmittal letter placed no deadline for Ms. Douglas to respond, although it indicated that she would receive the money ten days after return of the executed documents.  (Id., Ex. 6.)

According to Ms. Wager, Ms. Douglas telephoned her and advised that she would not sign the agreement and stated that she wanted more money.  (Id., ¶ 12.)  Ms. Wager advised Ms. Douglas on September 24, 2015 that the Hospital would pay her $5,000, and Ms. Douglas accepted the offer.  (Id., ¶ 13.)  On September 24, by overnight delivery, Ms. Wager sent Ms. Douglas a proposed settlement agreement containing a release and a stipulation of

discontinuance; the only difference between the versions sent on September 3 and the new version was the amount of the settlement.  (<u>Id.</u>, ¶¶ 14-15.)  The transmittal letter placed no time limit on when the documents should be returned.  (<u>Id.</u>, Ex. 7.)

On October 8, 2015, Ms. Wager received from Ms. Douglas the fully executed documents.  (<u>Id.</u>, ¶ 17.)  Ms. Douglas's signature reflects that she signed the document on September 25, 2015.  (<u>Id.</u>, Ex. 8.)

B.  <u>The Terms of the Settlement Agreement and Release.</u>

The two-page "Confidential Settlement Agreement and Release of Claims" recites Ms. Douglas's acknowledgement that "she has had a reasonable amount of time to consider the terms of this Agreement and knowingly and voluntarily consents to all of the terms and conditions contained herein."  (<u>Id.</u>)

> 3. In return for the consideration of $5,000, less applicable withholding, Ms. Douglas hereby fully and unconditionally releases, discharges and forgives Releasees from any and all actions, causes of action, suits, complaints, claims, or damages up to the date that Ms. Douglas executes this Agreement. The foregoing includes all claims with respect to her separation from employment, including without limitation, claims under federal, state and local equal employment opportunity laws and regulations and agrees not to pursue any further action. Ms. Douglas further agrees to withdraw and not pursue her claim against the Hospital in Small Claims Court, Index no. SC-000355-15/WP, and to permit the Hospital to submit her Stipulation Discontinuing Action upon her receipt of the Settlement Sum. Ms. Douglas represents that other than her complaint filed in Small Claims Court, and her appeal of the dismissal of her complaint before the City Commission on Human Rights, which was denied, she has no pending claims, administrative charges, or complaints against the Hospital with the EEOC, the New York State Division of Human Rights, or the New York City Commission on Human Rights and covenants that she will not file such claims, charges, or complaints with any such agency or in court.

The release language sweeps up "any and all . . . claims . . . up to the date that Ms. Douglas executes this Agreement."  It also encompasses the claims in more specific language: "The foregoing includes all claims with respect to her separation from employment, including without limitation, claims under federal, state and local equal employment opportunity laws and regulations and agrees not to pursue any further action."  Finally, she represents that she has no pending complaints against the Hospital with federal, state or local agencies, and the agreement contains a "covenant[] that she will not file such claims, charges, or complaints with any such agency or in court."

Ms. Douglas expressly testified in her deposition that she was aware that by executing the final settlement agreement, she was precluded from bringing all future claims against the Hospital.  At her deposition, she was asked, "[D]id you understand that the agreement contained a release which, if signed, would preclude you from suing the hospital in the future," to which she answered, "If signed, yes."  (P. Dep., 64.)  She confirmed that she signed and dated the agreement.  (Id.)

C.  Plaintiff Knowingly and Voluntarily Entered into the
Settlement Agreement and Release.

A former employee may "settle or waive claims of discrimination in violation of [Title VII] so long as the waiver is made knowingly and voluntarily."  Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1365 (2d Cir. 1991).  The principle applies to other types of discrimination claims arising under federal and state law.  See Hsueh v. The Bank of N.Y., 05 Civ. 5345 (JSR) (AJP), 2006 WL 2778858, at *3 (S.D.N.Y. Sept. 26, 2006) (collecting cases).

In examining the issue of whether the release was knowing and voluntarily, the Circuit applies a "totality of the circumstances" inquiry to ascertain whether a release was

"knowing and voluntary."  Livingston v. Adirondack Beverage Co., 141 F.3d 434, 438 (2d

Cir.1998) (citing Nicholas v. NYNEX, Inc., 929 F. Supp. 727, 730 n. 1 (S.D.N.Y. 1996)).

Relevant factors include:

> 1) the plaintiff's education and business experience, 2) the amount
> of time the plaintiff had possession of or access to the agreement
> before signing it, 3) the role of plaintiff in deciding the terms of the
> agreement, 4) the clarity of the agreement, 5) whether the plaintiff
> was represented by or consulted with an attorney, and 6) whether
> the consideration given in exchange for the waiver exceeds
> employee benefits to which the employee was already entitled by
> contract or law.

Bormann v. AT & T Communications, Inc., 875 F.2d 399, 403 (2d Cir. 1989) (quoting EEOC v.

American Express Pub. Corp., 681 F. Supp. 216, 219 (S.D.N.Y.1988) (Lasker, J.)).  The Circuit

also counsels in favor of consideration of whether the employer encouraged or discouraged the

employee to consult an attorney and whether the employee had a fair opportunity to do so.

Bormann, 875 F.2d at 403; see also Mandavia v. Columbia Univ., No. 12 Civ. 2188 (JPO), 2013

WL 2391695, at *10 (S.D.N.Y. June 3, 2013) (Oetken, J.), aff'd, 556 Fed. App'x 56 (2d Cir.

2014).

      Ms. Douglas's express acknowledgement that the agreement waived her claims

against the Hospital is consistent with the totality of the circumstances surrounding her execution

of the agreement.

1. The Plaintiff's Education and Business Experience.

      Ms. Douglas holds an Associate's Degree in Business Administration

from Westchester Community College.  (P. Dep., 14-15.)  She also is a certified nurses'

assistant (id., 16-17) and was employed by the Hospital for more than eleven years.

(Wager Aff't, ¶ 2.)

2.   The Amount of Time The Plaintiff Had Possession
     Of or Access to the Agreement Before Signing It.

As noted above, Ms. Douglas was sent the final settlement agreement on September 24, 2015, signed and dated it as of September 25, 2015, and it was received by the Hospital on October 8, 2015.

But the timing of the execution of the final settlement agreement does not tell the whole story.  She was sent the same settlement agreement with the same release language on September 3, 2015, with the only change between the first and the final being the amount paid in settlement.  At no time was she given a deadline to return the signed agreement.  Ms. Douglas had more than ample time to review and consider the release language before signing the final settlement agreement.

3.   The Role of Plaintiff in Deciding the Terms of the Agreement.

Ms. Douglas well understood her ability to negotiate the terms of the agreement, as evidenced by her escalating demands as to the adequacy of the settlement amount, which, initially, she orally indicated was acceptable to her.  The Hospital did not dig in its heels, but agreed to pay her a higher sum.

4.   The Clarity of the Agreement.

Ms. Douglas is identified by name, rather than as "releaser," throughout the clause.  The language is reasonably clear and straightforward.  It explains that the release of claims includes claims arising out of her termination of employment.  As noted, Douglas confirmed in her deposition that she understood that signing the agreement precluded her "from suing the hospital in the future."  (Pl. Dep., 64.)

5. Whether the Plaintiff was Represented by or Consulted with an Attorney.

Plaintiff was not represented by an attorney in the negotiation or execution of the settlement agreement. However, she had access to an attorney experienced in employment law at the outset of her dispute with the Hospital. That attorney wrote a letter to the Hospital that detailed the possible claims she might bring. This is significant because it should have given plaintiff an awareness and appreciation of the claims she was giving up by settling.

6. Whether The Consideration Given In Exchange for the Waiver Exceeds Employee Benefits to Which the Employee Was Already Entitled by Contract or Law.

The settlement amount of $5,000 exceeded the amount sought in the action pending in the Small Claims Part of the White Plains City Court, which was $4,147.47. The Court notes that plaintiff has retained the proceeds of the settlement. The Court has no effective means to evaluate the settlement amount in relation to the strength of the discrimination and retaliation claims asserted in the present action.

7. Whether the Employer Encouraged the Employee to Consult an Attorney and Whether the Employee Had a Fair Opportunity to Do So.

Ms. Wager swears that she told Ms. Douglas on September 24, 2015 that "she should review the agreement and consult with an attorney before signing it." (Wager Aff't, ¶13.) Ms. Douglas testified that she could not recall whether Ms. Wager advised her of her right to consult an attorney, but confirmed that she previously retained an attorney for her claims against the Hospital and that she was familiar with the process of retaining counsel. (Id., 64-65.) When viewed with Ms. Douglas's express acknowledgement that she was aware that signing the agreement waived her right to bring suit against the hospital, the Court concludes that, even if Ms. Wager did not advise her to consult an attorney, Ms. Douglas had sufficient sophistication and knowledge to seek the assistance of counsel.

CONCLUSION

Based on the totality of circumstances, no reasonable fact finder could conclude on the record before the Court that the settlement agreement and release were not knowing and voluntary.  The defendant's motion for summary judgment dismissing the action (Docket # 30) is therefore GRANTED.  The Clerk is directed to enter judgment for the defendant and to close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
December 2, 2016